## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
## HARRISBURG DIVISION

| | |
|---|---|
| KEVIN GAUGHEN and DAVID KOCUR, | |
| *Plaintiffs,* | Civil Action No.: 1:23-cv-00077 |
| v. | Hon. _____ |
| DAUPHIN COUNTY, a political subdivision of the Commonwealth of Pennsylvania and ANTHEA STEBBINS, in her individual capacity, | Mag. Judge Susan E. Schwab |
| | **BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| *Defendants.* | |

JEFFREY D. ZEMAN
PA Bar No. 328570
CONOR T. FITZPATRICK*
MI Bar No. P78981
FOUNDATION FOR INDIVIDUAL
    RIGHTS AND EXPRESSION
510 Walnut Street; Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (215) 717-3440
jeff.zeman@thefire.org
conor.fitzpatrick@thefire.org

*Attorneys for Plaintiffs*
*\*Pro Hac Vice* Motion pending

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................. iv

ISSUES PRESENTED ................................................................. viii

INTRODUCTION ...........................................................................1

FACTUAL BACKGROUND ...........................................................2

    I.    Plaintiffs Form a New Political Party and Run for
        Office. ...............................................................................2

    II.    Fort Hunter Park Is a Public Park in Dauphin County. ........3

    III.   Defendants Prohibited Plaintiffs From Petitioning in
        Fort Hunter Park, Claiming Park Policy Bans All
        Political Activity. ..............................................................5

PROCEDURAL HISTORY ............................................................8

ARGUMENT ................................................................................9

    I.    Plaintiffs Are Likely to Succeed on the Merits of Claim
        III Because Prohibiting Peaceful Political Activity in a
        Public Park Violates a Century of Settled Supreme
        Court Law. ......................................................................10

        A.    Collecting petition signatures is "core political
            speech." ..................................................................10

        B.    Fort Hunter Park is a traditional public forum. ..........12

        C.    The Fort Hunter Park Indenture does not trump
            the United States Constitution. .....................................17

        D.    Banning "political" expression is "presumptively
            unconstitutional." ....................................................19

        E.    A complete ban on political expression is not a
            reasonable time, place, or manner restriction. .............21

II.    The Remaining Factors Favor a Preliminary
       Injunction. ..................................................................23

III.   Because Plaintiffs Seek Only to Enjoin an
       Unconstitutional Policy, the Court Should Waive the
       Bond Requirement. .....................................................25

CONCLUSION ............................................................... 26

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ... 27

CERTIFICATE OF SERVICE ............................................. 28

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*ACLU v. Ashcroft,*
    322 F.3d 240 (3d Cir. 2003)...................................................... 22, 25

*Ark. Educ. Television Comm'n v. Forbes,*
    523 U.S. 666 (1998) ........................................................ 17

*Bd. of Airport Comm'rs of City of L.A. v. Jews for Jesus, Inc.,*
    482 U.S. 569 (1987) ........................................................ 18

*Boos v. Barry,*
    485 U.S. 312 (1988) ........................................................ 21

*Brown v. Hartlage,*
    456 U.S. 45 (1982) ........................................................ 12

*Buckley v. American Const. Law Found., Inc.,*
    525 U.S. 182 (1999).........................................................11

*Burton v. Wilmington Parking Authority,*
    365 U.S. 715 (1961)..........................................................19

*Carey v. Brown,*
    447 U.S. 455 (1980)....................................................14, 15, 24

*Cohen v. California,*
    403 U.S. 15 (1971) .........................................................22

*Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.,*
    473 U.S. 788 (1985).........................................................13

*Council of Alt. Pol. Parties v. Hooks,*
    121 F.3d 876 (3d Cir. 1997)................................................25

*Ctr. for Amalgamated Transit Union Loc. 85 v. Port Auth. of
    Allegheny Cnty.,* 39 F.4th 95 (3d Cir. 2022) ........................24

*Ctr. for Investigative Civ. Action Reporting v. SEPTA*,
  344 F. Supp. 3d 791 (E.D. Pa. 2018) ....................................................25

*Earnest by and through Kohler v. Mifflin Cnty. Sch. Dist.*,
  No. 1:20-cv-1930, 2020 WL 13132931 (M.D. Pa. Oct. 23,
  2020) ..............................................................................................26, 27

*Elrod v. Burns*,
  427 U.S. 347 (1976)..............................................................................24

*Evans v. Newton*,
  382 U.S. 296 (1966)......................................................................3, 19, 21

*Frisby v. Schultz*,
  487 U.S. 474 (1988)..............................................................................17

*Greater Phila. Chamber of Com. v. City of Phila.*,
  949 F.3d 116 (3d Cir. 2020)..................................................................10

*Greer v. Spock*,
  424 U.S. 828 (1976)..............................................................3, 11, 14, 24

*Hague v. CIO*,
  307 U.S. 496 (1939)..............................................................2, 13, 14, 24

*Int'l Soc'y For Krishna Consciousness, Inc. v. N.J. Sports and
  Exposition Auth.*, 691 F.2d 155 (3d Cir. 1982)..................................18

*K.A. v. Pocono Mountain. Sch. Dist.*,
  710 F.3d 99 (3d Cir. 2013)....................................................................25

*Krislov v. Rednour*,
  226 F.3d 851 (7th Cir. 2000) ................................................................13

*Libertarian Party of Va. v. Judd*,
  718 F.3d 308 (4th Cir. 2013) ................................................................13

*Marsh v. Alabama*,
  326 U.S. 501 (1946)..............................................................................20

*Mazo v. N.J. Sec'y of State*,
   52 F.4th 124 (3d Cir. 2022) ...................................................13

*McTernan v. City of York, PA*,
   564 F.3d 636 (3d Cir. 2009).................................................14

*Meyer v. Grant*,
   486 U.S. 414 (1988).............................................2, 11, 12, 13

*Miller v. Mitchell*,
   598 F.3d 139 (3d Cir. 2010)..................................................10

*Monell v. Dep't of Social Services*,
   436 U.S. 658 (1978)..............................................................10

*NAACP v. Button*,
   371 U.S. 415 (1963) .............................................................22

*Ne. Women's Ctr., Inc. v. McMonagle*,
   939 F.2d 57 (3d Cir. 1991) ...................................................23

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,
   460 U.S. 37 (1983) ..................................................... *passim*

*Reed v. Town of Gilbert, Ariz.*,
   576 U.S. 155 (2015)........................................................20, 21

*Temple Univ. v. White*,
   941 F.2d 201 (3d Cir. 1991)..................................................26

*United States v. Grace*,
   461 U.S. 171 (1983)........................................................17, 18

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976)..............................................................24

*Verlo v. Martinez*,
   820 F.3d 1113 (10th Cir. 2016)............................................19

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989)..............................................14, 15, 23

*Wilmoth v. Sec'y of N.J.*,
    731 F. App'x 97 (3d Cir. 2018) .................................................13

**Statutes:**

25 Pa. Stat. § 2872.1(14) ..........................................................4

25 Pa. Stat. § 2872.1(9) ............................................................9

25 Pa. Stat. § 2872.2 ................................................................9

26 U.S.C. § 501(c)(3) ................................................................8

**Rules:**

F.R.C.P. 65 ..............................................................................26

**Constitutional Provisions:**

U.S. Const. amend. I ...................................................... *passim*

## <u>ISSUES PRESENTED</u>

1.  Should Defendants be preliminarily enjoined from prohibiting peaceful political petitioning in Fort Hunter Park since the Park is a traditional public forum and petitioning is core political speech protected by the First Amendment?

    Plaintiffs' Answer:      Yes.

    Defendants' Answer:  No.


2.  Should Defendants be preliminarily enjoined from banning political activity in Fort Hunter Park on the basis that singling out political expression for unfavorable treatment constitutes unlawful content discrimination under the First Amendment?

    Plaintiffs' Answer:      Yes.

    Defendants' Answer:  No.

## **INTRODUCTION**

Dauphin County is defying 80 years of settled Supreme Court precedent by banning political speech in a public park. The First Amendment prohibits this brazen act of censorship. Our public parks are "for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983) (quoting *Hague v. CIO*, 307 U.S. 496, 515 (1939)). In short, public parks are for the people.

Plaintiffs Kevin Gaughen and David Kocur visited Dauphin County's Fort Hunter Park in the summer of 2022, intending to speak with neighbors and gather signatures to place Kocur on the general election ballot for state representative. But the County's Parks and Recreation Director, Defendant Anthea Stebbins, arrived with two guards and shut them down, telling them political activity is banned in the Park.

This was wrong. Circulating petitions is "core political speech." *Meyer v. Grant*, 486 U.S. 414, 421–22 (1988). And it is a "long-established constitutional rule that there cannot be a blanket exclusion of First

Amendment activity from a municipality's open streets, sidewalks, and parks." *Greer v. Spock*, 424 U.S. 828, 835 (1976). Defendants say the owner who conveyed the Park to the County insisted on banning politics, and therefore the County must enforce the former owner's wishes. Wrong again. The Supreme Court rejected such an argument more than a half-century ago, holding that when the government operates a park, the Constitution follows. *See Evans v. Newton*, 382 U.S. 296, 302 (1966).

## FACTUAL BACKGROUND

### I.   Plaintiffs Form a New Political Party and Run for Office.

Plaintiff Kevin Gaughen is a resident of Mechanicsburg, Pennsylvania, and former Executive Director of the Pennsylvania Libertarian Party. (Verified Compl. ¶ 11.) Gaughen left the party after the national Libertarian Party changed its platform in a way that no longer aligned with his political values. (*Id.*) So Gaughen, along with like-minded former Libertarians, formed the Keystone Party. (*Id.*)

Plaintiff David Kocur is a resident of Harrisburg, Pennsylvania, and was the Keystone Party's 2022 candidate for Pennsylvania House District 104, which includes parts of Dauphin and Lebanon counties. (*Id.* ¶ 12.) This was Kocur's first time running for public office. (*Id.*) Due to

the Keystone Party's status as a "minor" political party, Kocur needed to collect 300 signatures to appear on the general election ballot. 25 Pa. Stat. § 2872.1(14); (Ex. D, 2022 Signature Requirements; Ex. E, 2022 Nomination Paper.) On June 11, 2022, Gaughen and Kocur decided to try and collect signatures for Kocur and other Keystone Party candidates at Fort Hunter Park ("the Park"). (Verified Compl. ¶¶ 3, 21.)

## II.   Fort Hunter Park Is a Public Park in Dauphin County.

Fort Hunter Park is a 40-acre public park along the Susquehanna River in Harrisburg, Pennsylvania. (*Id.* ¶ 23.) The Dauphin County Parks and Recreation Department (the "Department") is headquartered at Fort Hunter Park. (Ex. F, *Parks & Recreation*, Dauphin County, https://www.dauphincounty.gov/government/support-services/parks-recreation [https://perma.cc/X64M-SJHF] (last visited Jan. 16, 2022).) The Park website informs potential visitors that:

> **Fort Hunter Park is a part** of the Dauphin County Parks and Recreation system. As such, the County of Dauphin has set rules and policies that govern the use of Fort Hunter Park. For everyone's safety and enjoyment, all visitors are asked to abide by the following park rules and procedures. **Dogs are welcome but must be leashed!**

(Ex. G, *Park Rules*, Fort Hunter Mansion and Park, https://forthunter.org/visit/park-rules [https://perma.cc/HYT5-BYY7] (last visited Jan. 16, 2022).)

Additionally, the Dauphin County Board of Commissioners approves the allocation of County funds to assist the operation and maintenance of Fort Hunter Park. For example, on February 23, 2022, the Board approved $150,000 toward the construction of a new playground in the Park. (Ex. H, 2022 Gaming Grant Awards at 2.)

Under Dauphin County Ordinance #2-95, which is displayed on the Fort Hunter Park website, "All County parks shall be open for public use on a year-round basis, unless otherwise designated." (Ex. G.) Fort Hunter Park is open to the public daily from 8 a.m. until dusk. (Ex. I, Fort Hunter Mansion and Park, https://forthunter.org [https://perma.cc/QR7Q-B6EF] (last visited Jan. 13, 2022).) Occasionally, areas of the Park are reserved for private or ticketed events. On Saturday, June 11, 2022, the Department held its annual "Proudly PA!" event in Fort Hunter Park. (Verified Compl. ¶ 30.) The ticketed event occupied only a small part of the Park, with the rest remaining open to the public. (*Id.* ¶ 31.)

### III. Defendants Prohibited Plaintiffs From Petitioning in Fort Hunter Park, Claiming Park Policy Bans All Political Activity.

Gaughen and Kocur arrived at Fort Hunter Park on June 11 while the "Proudly PA!" event was underway. (*Id.* ¶ 32.) They stood in an open area of the Park near the event holding their ballot petitions. (*Id.* ¶ 33.) They canvassed for about an hour, speaking amicably with passers-by about the Keystone Party and the petitions to put Keystone Party candidates on the general election ballot. (*Id.* ¶¶ 34–35.)

Then, park security intervened. A guard instructed Gaughen and Kocur that they were not permitted to petition for ballot signatures in Fort Hunter Park. (*Id.* ¶¶ 35–36.) Gaughen politely informed the guard that the First Amendment guaranteed their right to do so. (*Id.* ¶ 37.) The guard replied that he would have to "verify" Gaughen's statement and departed. (*Id.* ¶ 38.)

A few minutes later, a second guard approached Gaughen and Kocur and instructed them to leave the Park. (*Id.* ¶¶ 39–40.) As with the first guard, Gaughen politely informed him that the First Amendment protected their right to peacefully petition in a public park. (*Id.* ¶ 41.) The second guard departed, telling Gaughen and Kocur that he would

discuss the matter with Department Director Anthea Stebbins. (*Id.* ¶¶ 15, 42.)

Gaughen and Kocur resumed talking to passersby and collecting signatures for another half hour. (*Id.* ¶¶ 42–43.) Then, Director Stebbins arrived, flanked by both guards. (*Id.* ¶ 43.) Stebbins instructed Gaughen and Kocur their petitioning must cease because political activity is banned in Fort Hunter Park. (*Id.* ¶¶ 4, 44.)

Director Stebbins handed Gaughen and Kocur a copy of the 1980 Indenture conveying the land from the Fort Hunter Foundation to Dauphin County. (*Id.* ¶ 45.) The Indenture conveys Fort Hunter Park to the County "in trust, for use for historical, park and recreational purposes in accordance with the terms and conditions" set forth therein. (*Id.* ¶ 46; Ex. A, Indenture at 1.)

The Indenture directs the Trustees to operate the facility in "conformity" with "rules or regulations as to conduct of the public which may be promulgated by the Parks and Recreation Department of the County of Dauphin." (Ex. A at 6.) Page 12 of the Indenture provides:

> No part of the activities of this Trust shall be the participation in, or intervention in (including the publishing or distributing of statements), any

political campaign of any candidate for public office.[1]

(Verified Compl. ¶¶ 47–48; Ex. A at 11–12.)

Director Stebbins told Gaughen and Kocur this provision means the Department can ban political activity in Fort Hunter Park, even though it is otherwise a typical public park operated by the Department. (*See* Verified Compl. ¶ 47.) Heeding Stebbins's directive, Gaughen and Kocur ceased petitioning and departed the Park. (*Id.* ¶ 49.) Had Stebbins not intervened and enforced Dauphin County's ban, Gaughen and Kocur would have continued collecting signatures from and speaking with Park visitors on June 11, would have returned to the Park before Election Day to do the same, and would have returned to the Park after Election Day to continue canvassing support for the Keystone Party. (*Id.* ¶ 50.)

Seeking to avoid litigation, Gaughen and Kocur sent a letter to Dauphin County (through the undersigned counsel) outlining the pertinent law and demanding that Dauphin County lift the ban. (*Id.* ¶ 56;

---

[1] The language contained on pages 11–12 of the Indenture mirrors, almost verbatim, the limitations 26 U.S.C. § 501(c)(3) places on non-profit organizations to remain exempt from federal taxation. The Friends of Fort Hunter, Inc., which solicits donations to support the operation and preservation of Fort Hunter Park, is a § 501(c)(3) organization.

Ex. B, Oct. 13, 2022 Demand Letter.) It refused. The County, responding through counsel, wrote, "For the reasons set forth in the Indenture, Fort Hunter Park is not open to political activity—by anyone! This has long been the policy of the Dauphin County Commissioners and their Parks and Recreation Department." (Verified Compl. ¶¶ 57–58; Ex. C, Oct. 19, 2022 Response Letter at 3.)

On December 22, 2022, the Keystone Party nominated a candidate for Justice of the Pennsylvania Supreme Court in anticipation of the November 2023 election. (Verified Compl. ¶ 51.) In order for its candidate to appear on the general election ballot, the Keystone Party will have to collect and submit 1,000 ballot petition signatures. (25 Pa. Stat. § 2872.1(9); 25 Pa. Stat. § 2872.2.) Gaughen and Kocur wish to return to the Park to speak to fellow Pennsylvanians about the Keystone Party, solicit support for the Keystone Party, and gather signatures for Keystone Party candidates for the November 2023 and future elections. (Verified Compl. ¶ 53.)

## **PROCEDURAL HISTORY**

Plaintiffs filed a Verified Complaint on January 16, 2023. (ECF No. 1.) The Verified Complaint's three claims seek monetary damages

against Director Stebbins in her individual capacity (claim I), monetary damages against Dauphin County under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (claim II), and declaratory and injunctive relief against Dauphin County regarding the ban on political activity in Fort Hunter Park (claim III). This Motion seeks preliminary relief solely as to claim III.

## ARGUMENT

Gaughen and Kocur are entitled to a preliminary injunction because they can demonstrate "(1) a likelihood of success on the merits; (2) [they] will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (granting preliminary injunction on First Amendment claim). Though the movant usually faces the burden to establish the likelihood of success on the merits, "[i]n First Amendment cases, the initial burden is flipped." *Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020). "The government bears the burden of proving that the law is constitutional," and "plaintiff must

be deemed likely to prevail if the government fails to show the constitutionality of the law." *Id.* (cleaned up).

## I. Plaintiffs Are Likely to Succeed on the Merits of Claim III Because Prohibiting Peaceful Political Activity in a Public Park Violates a Century of Settled Supreme Court Law.

A preliminary injunction to prevent Defendants' censorship of political activity in Fort Hunter Park is warranted because of the "long-established constitutional rule that there cannot be a blanket exclusion of First Amendment activity from a municipality's open streets, sidewalks, and parks." *Greer*, 424 U.S. at 835.

### A. Collecting petition signatures is "core political speech."

Circulating a petition "involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Meyer*, 486 U.S. at 421-22. *See also Buckley v. American Const. Law Found., Inc.*, 525 U.S. 182, 186 (1999) (citing *Meyer* and holding same).

In *Meyer*, which controls here, the Court explained that the First Amendment protects petitioning because it "involves both the expression of a desire for political change and a discussion of the merits of the proposed change." 486 U.S. at 421. Petition circulators must "persuade

[the public] that the matter is one deserving of the public scrutiny and debate that would attend its consideration by the whole electorate." *Id.* And "[t]his will in almost every case involve an explanation of the nature of the proposal and why its advocates support it." *Id.*

Likewise, here, when Gaughen and Kocur asked neighbors to sign a petition to place Kocur and other Keystone Party candidates on the ballot, they (1) explained who Kocur is and what he stands for, (2) explained what the Keystone Party is and what it stands for, and (3) tried to convince the neighbors that Kocur and the Keystone Party are worthy of support and inclusion on the ballot. (Verified Compl. ¶ 34.) That is "core political speech" protected by the First Amendment. *Meyer*, 486 U.S. at 422.

True, *Meyer* addressed ballot initiative petitions, but candidates, "no less than any other person, ha[ve] a First Amendment right to engage in the discussion of public issues and vigorously and tirelessly to advocate his own election and the election of other candidates." *Brown v. Hartlage*, 456 U.S. 45, 53 (1982) (citation omitted). Petitions to place a candidate on the ballot enjoy the same protections under *Meyer* as petitions for ballot initiatives. *See, e.g.*, *Wilmoth v. Sec'y of N.J.*, 731 F. App'x 97, 102–

03 (3d Cir. 2018) (applying *Meyer* and explaining that circulating petitions on behalf of candidates is protected by the First Amendment); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 314 (4th Cir. 2013) (same); *Krislov v. Rednour*, 226 F.3d 851, 858 (7th Cir. 2000) (same).

Gaughen and Kocur's petitioning "involve[d] both the expression of a desire for political change" and discussing the "merits" of proposed candidates to bring about that change. *Meyer*, 486 U.S. at 421. This sort of communication between citizens is the "lodestar for core political speech" and fully protected by the First Amendment. *Mazo v. N.J. Sec'y of State*, 52 F.4th 124, 142 at 9 (3d Cir. 2022) (quoting *Meyer*, 486 U.S. at 422).

## B.   Fort Hunter Park is a traditional public forum.

Using parks for political expression "has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens." *Hague*, 307 U.S. at 515. Accordingly, public parks are the quintessential "traditional public forum." *Perry Educ. Ass'n*, 460 U.S. at 45. *See also Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985) ("Public streets and parks fall into th[e] category" of "traditional

public fora"); *McTernan v. City of York, PA*, 564 F.3d 636, 645 (3d Cir. 2009) (same).

"Speech in a traditional public forum is afforded maximum constitutional protection." *McTernan*, 564 F.3d at 645. And "the rights of the state to limit expressive activity" in a traditional public forum "are sharply circumscribed." *Perry Educ. Ass'n*, 460 U.S. at 45.

To that end, the Supreme Court has repeatedly held the government cannot ban political expression from a traditional public forum. "The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all . . . but it must not, in the guise of regulation, be abridged or denied." *Hague*, 307 U.S. at 515–16. Indeed, "streets, sidewalks, parks, and other similar public places are so historically associated with the exercise of First Amendment rights that access to them for the purpose of exercising such rights cannot constitutionally be denied broadly and absolutely." *Carey v. Brown*, 447 U.S. 455, 460 (1980) (citation omitted). *See also Greer*, 424 U.S. at 835 (noting the "long-established constitutional rule that there cannot be a blanket exclusion of First Amendment activity from a municipality's open

streets, sidewalks, and parks"); *Perry Educ. Ass'n*, 460 U.S. at 45 ("In these quintessential public forums, the government may not prohibit all communicative activity").[2]

But Dauphin County "broadly and absolutely" bars all political activity at Fort Hunter Park. *Carey*, 447 U.S. at 460. Dauphin County proclaims, "Fort Hunter Park is not open to political activity – by anyone!" (Verified Compl. ¶ 58; Ex. C at 3.) The First Amendment prohibits this categorical ban on political speech in a traditional public forum.

In their response letter, Defendants mistakenly rely on *Perry*'s statement that "the State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." (Ex. C at 3) (quoting *Perry Educ. Ass'n*, 460 U.S. at

---

[2] In a traditional public forum like Fort Hunter Park, the government may enforce only "reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (cleaned up). As explained below in Sections D and E, Defendants' ban on political activity in Fort Hunter Park is neither content-neutral nor a reasonable time, place, or manner restriction.

46). But that language addressed "public property *which is not* by tradition or designation a forum for public communication." *Perry Educ. Ass'n*, 460 U.S. at 46 (emphasis added). Parks, *Perry* made clear, are *exactly* the type of public property "which by long tradition . . . have been devoted to assembly and debate." *Id.* at 45.

Defendants' response letter  also relies on *Perry* to argue that "'the existence of a right of access to public property and on the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue.'" (Ex. C at 2) (quoting *Perry Educ. Ass'n*, 460 U.S. at 46). From this, Defendants conclude that the "character" of a property can be defined by "local circumstances" and "deed restriction[s]." *Id.* Not so. *Perry*'s reference to the "character" of a property simply means the type of forum. Indeed, the sentence upon which Defendants rely immediately precedes the Court's explanation of the different types of forums and its explanation that public parks are traditional public forums, where the government's power to regulate speech is at its most limited. *Perry Educ. Ass'n*, 460 U.S. at 45–46.

First Amendment rights on government property are determined by the nature of the property, not the government's or prior property

owner's wishes. "Traditional public fora are defined by the objective characteristics of the property, such as whether, by long tradition or by government fiat, the property has been devoted to assembly and debate." *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 667 (1998) (cleaned up). As the Supreme Court explained, for the purpose of forum analysis, courts need not even make a "particularized inquiry" into the precise nature of a public street or park, given that "all" public streets and parks constitute traditional public forums. *Frisby v. Schultz*, 487 U.S. 474, 481 (1988).

The Supreme Court rejected in *United States v. Grace*, 461 U.S. 171 (1983), a position similar to that advanced by Defendants. *Grace* addressed the constitutionality of a federal statutory ban on demonstrations on sidewalks abutting the Supreme Court. The Court acknowledged that, owing to the statute, the sidewalks had "not been traditionally held open for the use of the public for expressive activities." *Id.* at 178–179. But the Court applied the same analysis applicable to any other sidewalk—that an "absolute prohibition on a particular type of expression will be upheld only if narrowly drawn to accomplish a

compelling governmental interest"—and struck down the ban. *Id.* at 177, 183.

Neither the federal government nor Dauphin County may declare that the "character" of a public street, sidewalk, or park is to be free from First Amendment expression. In fact, the Supreme Court held that even *nonpublic* forums may not impose *total* bans on First Amendment expression like the one Dauphin County enforces here. *Bd. of Airport Comm'rs of City of L.A. v. Jews for Jesus, Inc.*, 482 U.S. 569, 576 (1987). The First Amendment squarely protects Gaughen's and Kocur's core political speech in the traditional public forum of Fort Hunter Park.

## C.   The Fort Hunter Park Indenture does not trump the United States Constitution.

The Fort Hunter Park Indenture is irrelevant. Public parks "are stamped with a kind of First Amendment easement" allowing the public to use the land for expressive purposes. *Int'l Soc'y For Krishna Consciousness, Inc. v. N.J. Sports and Exposition Auth.*, 691 F.2d 155, 161 (3d Cir. 1982) (cleaned up). Governmental power to control speech in a traditional public forum "is circumscribed precisely *because* the public has . . . acquired, in effect, a 'speech easement' that the government property

owner must now honor." *Verlo v. Martinez*, 820 F.3d 1113, 1146 (10th Cir. 2016).

The Supreme Court squarely held that the government may not rely on property conveyance restrictions to evade the commands of the Constitution. *Evans*, 382 U.S. at 302. *Evans* involved a will devising property to a city government to be "used as a park . . . for white people only." *Id.* at 297. The Court barred enforcement of the property restriction, holding the park's public nature rendered it subject to the requirements of the Constitution. The Court explained that even though the park remained under the control of private trustees, "a park . . . is more like a fire department or police department that traditionally serves the community." *Id.* at 302.

Dauphin County operates Fort Hunter Park. The Park's website says so. (Ex. G.) And when a government operates a park, or any other facility, the Constitution follows. *See, e.g.*, *Evans*, 382 U.S. at 297 (park held in trust and operated by local government); *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961) (restaurant operated in building owned by government). Even privately owned company towns must allow protected First Amendment speech. *Marsh v. Alabama*, 326 U.S. 501,

505–06 (1946) ("The State urges in effect that the corporation's right to control the inhabitants of Chickasaw is coextensive with the right of a homeowner to regulate the conduct of his guests. We cannot accept that contention.").

This makes good sense. Were *Evans*'s approach not the law, the government could operate a segregated swimming pool, Christian-only recreation center, or ban proselytizing in a park, shielded by the excuse that some private owner who conveyed the property insisted the restriction run with the land. The law does not permit such an end-run around the Constitution.

### D. Banning "political" expression is "presumptively unconstitutional."

Dauphin County's prohibition on political expression in Fort Hunter Park is also unlawful content discrimination. Under the First Amendment, "a government, including a municipal government vested with state authority, has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (cleaned up). The Supreme Court squarely held in *Reed* that an ordinance which distinguished (among

other characteristics) between "political signs" and non-political signs constituted "paradigmatic" content discrimination. *Id.* at 164–69.

So too, here, Defendants' prohibition on political activity constitutes "paradigmatic" content discrimination. Defendants prohibit political expression, and only political expression, from Park grounds. Park policy places no subject-matter constraints on expression related to the arts, sciences, or religion. Defendants unlawfully "single[] out a specific subject matter for differential treatment." *Id.* at 169.

The Supreme Court has explained that "*content-based* restriction[s] on *political speech* in a *public forum* must be subjected to the most exacting scrutiny." *Boos v. Barry*, 485 U.S. 312, 321 (1988). Under this "exacting scrutiny," content-based regulations are "presumptively unconstitutional" and "justified only if the government proves they are narrowly tailored to serve compelling state interests." *Reed*, 575 U.S. at 163.

Both on its face and as applied against Plaintiffs, Defendants' prohibition on political activity fails strict scrutiny and is unconstitutional. First, the County does not have a legitimate (much less compelling) interest in suppressing all political speech in a public park.

Indeed, the government does not even have a legitimate state interest in preventing offensive political messages inside government buildings. *See Cohen v. California*, 403 U.S. 15, 24–25 (1971).

Second, the restriction is not narrowly tailored. "Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone." *NAACP v. Button*, 371 U.S. 415, 438 (1963) (cleaned up). But Defendants' policy prohibits all political activity in Fort Hunter Park, no matter the time, place, or manner of expression.

Defendants may argue they are merely enforcing a provision in the Indenture, rendering the ban "tailored" to meet that "interest." Putting aside that that argument is foreclosed by *Evans*, *see supra* Section C, the state's "interest" cannot be an unconstitutional end. *See ACLU v. Ashcroft*, 322 F.3d 240, 251 n.11 (3d Cir. 2003).

Because Defendants' ban constitutes unlawful content discrimination, Plaintiffs are likely to succeed on the merits and the Court should grant Plaintiffs' requested injunction.

### E.    A complete ban on political expression is not a reasonable time, place, or manner restriction.

Defendants' letter insists their ban on political activity in Fort Hunter Park is a permissible time, place, or manner restriction. (Ex. C

at 2.) Defendants are wrong. Closing a park at 10 p.m. is a "time, place, or manner" restriction. Completely prohibiting political expression is not.

A time, place, or manner restriction governs ***how*** First Amendment expression may take place, not ***whether*** it may take place. As the Third Circuit explained, a time, place, and manner analysis is appropriate only if a law "regulates when, where, and how [a citizen] may speak, but not what he may say." *Ne. Women's Ctr., Inc. v. McMonagle*, 939 F.2d 57, 63 (3d Cir. 1991) *See also Ward*, 491 U.S. at 799 n.7 (explaining the difference between a time, place, or manner restriction and a "total ban").

Here, Defendants do not permit political activity in Fort Hunter Park at any time, in any place, or in any manner. Instead, Defendants regulate ***what*** Park guests "may say." *Ne. Women's Ctr.*, 939 F.2d at 63. That is a content-based ban, not a reasonable restriction on when, where, and how Plaintiffs and other Pennsylvanians may engage in political expression in Fort Hunter Park.

The Supreme Court has been crystal clear that a regulation "which singles out speech of a particular content and seeks to prevent its dissemination completely" "plainly exceed[s]" the "proper bounds of time, place, and manner restrictions." *Va. State Bd. of Pharmacy v. Va. Citizens*

*Consumer Council, Inc.*, 425 U.S. 748, 771 (1976). And, as explained above, the Supreme Court has repeatedly held that the First Amendment prohibits outright bans on expression in traditional public forums. *Hague*, 307 U.S. at 515–16; *Carey*, 447 U.S. at 460; *Greer*, 424 U.S. at 835; *Perry Educ. Ass'n*, 460 U.S. at 45.

Plaintiffs are likely to succeed on the merits of Claim III and the Court should issue Plaintiffs' requested injunction.

## II. The Remaining Factors Favor a Preliminary Injunction.

Plaintiffs have suffered and continue to suffer irreparable harm due to loss of their First Amendment right to engage in political activity in a public park. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). *See also Ctr. for Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 107–08 (3d Cir. 2022) (holding same). Defendants' prohibition on Gaughen and Kocur from collecting petition signatures and discussing the Keystone Party in a public park therefore "unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373.

The balance of harms likewise favors Plaintiffs. In a First Amendment injunction analysis, "neither the government nor the public generally can claim an interest in enforcement of an unconstitutional law." *Ashcroft*, 322 F.3d at 251 n.11 (cleaned up). Because, as explained above, Defendants' ban on political speech in Fort Hunter Park violates Plaintiffs' First Amendment liberties, the balance of harms favors Plaintiffs.

Finally, the public interest supports granting an injunction. "The public interest clearly favors the protection of constitutional rights . . . ." *Council of Alt. Pol. Parties v. Hooks*, 121 F.3d 876, 884 (3d Cir. 1997). Relatedly, "enforcement of an unconstitutional law vindicates no public interest." *K.A. v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 114 (3d Cir. 2013). And there is "an obvious and great public interest in the free exchange of views on political, social, and economic issues," an exchange public parks in the United States have facilitated for centuries. *Ctr. for Investigative Civ. Action Reporting v. SEPTA*, 344 F. Supp. 3d 791, 803 (E.D. Pa. 2018).

The public interest favors protecting Plaintiffs' (and all Pennsylvanians') core First Amendment right to peacefully petition and

discuss politics in a public park. The Court should grant Plaintiffs'
requested injunction.

## III.  Because Plaintiffs Seek Only to Enjoin an Unconstitutional Policy, the Court Should Waive the Bond Requirement.

The Court should exercise its discretion to waive the bond
requirement under F.R.C.P. 65. District courts "may waive the bond
requirement of Rule 65(c) under certain circumstances." *Earnest by and
through Kohler v. Mifflin Cnty. Sch. Dist.*, No. 1:20-cv-1930, 2020 WL
13132931, at *6 (M.D. Pa. Oct. 23, 2020) (Ex. J). "When considering
whether to waive the bond requirement, a court should consider (1) 'the
possible loss to the enjoined party together with the hardship that a bond
requirement would impose on the applicant'; and (2) 'the impact that a
bond requirement would have on enforcement' of an important federal
right." *Id.* (quoting *Temple Univ. v. White*, 941 F.2d 201, 220 (3d Cir.
1991)). "Where the balance of these equities weighs overwhelmingly in
favor of the party seeking the injunction," a district court may waive the
bond requirement. *Id.* (internal quotation omitted).

Courts often decline to require a bond in First Amendment cases
because a bond "would effectively force [the movant] to pay a monetary
cost to enforce" their First Amendment rights. *Id.* (waiving bond

requirement for plaintiff seeking to enjoin unconstitutional school speech policy). This Court should, too. Complying with the First Amendment costs Defendants nothing. The status quo costs Pennsylvanians their freedom of speech.

## **CONCLUSION**

Plaintiffs respectfully request that the Court grant Plaintiffs' motion.

Respectfully submitted,

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION

By:  /s/ Jeffrey D. Zeman
  Jeffrey D. Zeman (Pa. 328570)
  Conor T. Fitzpatrick* (Mich. P78981)
  FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
  510 Walnut Street; Suite 1250
  Philadelphia, PA 19106
  Tel: (215) 717-3473
  jeff.zeman@thefire.org
  conor.fitzpatrick@thefire.org

  *Attorneys for Plaintiffs*
  **Pro Hac Vice* Motion pending

Dated:  January 17, 2023

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1. This document complies with the word limit of LR 7.8(b)(2) because, excluding the sections of the document exempt from the word count per the Clerk's instructions, this document contains 4,996 words.

2. This document complies with the typeface and type-style requirements of LR 5.1(c) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Date: January 17, 2022            /s/ Jeffrey D. Zeman
                                  Jeffrey D. Zeman
                                  FOUNDATION FOR INDIVIDUAL
                                    RIGHTS AND EXPRESSION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 17, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing upon all ECF filing Participants. I further certify that on the same day, I emailed a copy of the foregoing to Guy P. Beneventano, Esq., Assistant Solicitor for Dauphin County, at Guy@guyblaw.com, and that I dispatched a process server to personally serve the same on each Defendant:

Dauphin County
ADMINISTRATION BUILDING
2 South 2nd Street
Harrisburg, PA 17101

Anthea Stebbins
DAUPHIN COUNTY PARKS &
   RECREATION DEPARTMENT
Tavern House in Fort
   Hunter Park
100 Fort Hunter Road
Harrisburg, PA  17110


By: /s/ Jeffrey D. Zeman